IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY FEDIMORE,<br>　　　　Plaintiff<br><br>　　　　v.<br><br>DR. PETER LONGSTREET,<br>　　　　Defendant. | C.A. 08-46 Erie<br>District Judge Cohill<br>Magistrate Judge Baxter |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.     RECOMMENDATION

It is respectfully recommended that Defendant's motion for summary judgment [Document # 100] be granted, and that Plaintiff's motion for summary judgment [Document # 109] be denied.

### II.    REPORT

#### A.    Relevant Procedural History

On February 13, 2008, Plaintiff Anthony Fedimore, a prisoner incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"), originally filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Dr. Peter Longstreet ("Longstreet") and Nancy A. Giroux, Deputy Superintendent at SCI-Albion ("Giroux"). [Document # 6].  However, Plaintiff voluntarily dismissed Defendant Giroux from this case on or about July 3, 2008, leaving Defendant Longstreet as the sole Defendant. (See Document # 57).

In his *pro se* Complaint, Plaintiff claims that Defendant Longstreet's decision to reduce the dosage of his "Klonopin" medication "constitute[d] the unnecessary and wanton infliction of pain meeting the standard of deliberate indifference," and that Defendant Longstreet's "actions in light of Plaintiff's psychiatric history constitute[d] a conscious indifference making him liable in a civil rights action." (Complaint at p. 8).  In particular, Plaintiff avers that he "made [Defendant Longstreet] aware that when he is not taking "Klonopin" he has a documented history of becoming severely delusional, violent, paranoid, suicidal and assaultive toward

others" and that Defendant Longstreet "chose[] to ignore this obvious and serious danger...." (Id. at p. 9). As a result of these claims, Plaintiff seeks monetary damages and declaratory and injunctive relief, in the form of an order requiring the continuation/reinstatement of "Klonopin" and treatment by a psychiatrist other than Defendant Longstreet.

On March 26, 2008, Defendant Longstreet filed a motion to dismiss [Document # 15], asserting that Plaintiff had failed to exhaust his administrative remedies, and in any event, failed to state a claim upon which relief may be granted. On October 1, 2008, this Court issued a Report and Recommendation recommending that Defendant Longstreet's motion to dismiss be denied because (i) he failed to adequately establish that Plaintiff had not exhausted his administrative remedies; and (ii) the allegations of the Complaint sufficiently stated a cause of action at the pleading stage. [Document # 61]. This Report and Recommendation was adopted by District Judge Sean J. McLaughlin by Memorandum Order dated February 12, 2009. [Document # 66].

The parties have since completed discovery and Defendant Longstreet has now filed a motion for summary judgment seeking entry of judgment in his favor "because the Plaintiff cannot sustain his burden of proving that Dr. Longstreet acted with 'deliberate indifference' to his serious medical needs." (Document # 100 at ¶ 5). In response, Plaintiff has filed his own motion for summary judgment asking that judgment be entered in his favor as a matter of law. [Document # 109]. Plaintiff has also filed a response to Defendant Longstreet's motion [Document # 112], and Defendant Longstreet has, in turn, filed a response to Plaintiff's motion. [Document # 111]. This matter is now ripe for consideration.

**B.     Relevant Factual History**[1]

Plaintiff was transferred from SCI-Fayette to SCI-Albion on August 14, 2007. (SMF,

---

[1]

The factual history set forth herein is derived from Defendant Longstreet's Statement of Uncontested Material Facts [Document # 102], which is essentially unopposed and is adequately supported by the evidence of record. Citations to the Statement will be designated as "SMF, ¶ __."

¶ 24). While at SCI-Fayette, Plaintiff was treated by the staff psychiatrist, Peter Saavedra, M.D., from January 16, 2006, through the date of his transfer. (SMF, ¶¶ 8-23). During this time, Plaintiff was assessed with major depressive disorder and generalized anxiety disorder, for which he had been taking the prescription medication Klonopin for more than 20 years. (SMF, ¶¶ 3, 8).

On January 16, 2006, Dr. Saavedra increased Plaintiff's Klonopin dosage to 4 mg a day, in response to Plaintiff's complaints of irritability. (SMF, ¶ 8). Approximately one year later, on January 19, 2007, Dr. Saavedra increased Plaintiff's daily dosage of Klonopin to 5 mg, and also prescribed 100 mg each of Wellbutrin and Vistarol, due to Plaintiff's reports of "insomnia, anxiety and loss of focus." (SMF, ¶ 16). The Wellbutrin was subsequently discontinued on January 26, 2007, after Plaintiff complained about its side effects, and the daily dosage of Vistarol was later increased to 200 mg, on March 9, 2007, after Plaintiff indicated his "nerves were shot." (SMF, ¶¶ 17, 20). During his last examination of Plaintiff on July 23, 2007, Dr. Saavedra noted that Plaintiff's transfer to SCI-Albion was approved and that, "given the inmate's history of significant anxiety and adjustment issues, [he] would strongly suggest continuing Klonopin/Vistarol." (SMF, ¶ 23; Document 101, Exhibit 1 at p. 14).

Upon arriving at SCI-Albion, Plaintiff underwent an intake health screening, during which it was noted that he had: benzodiazepine (Klonopin) dependence; a history of major depression; Hepatitis viruses A, B, and C; and degenerative joint disease in his cervical spine, for which he was taking the prescription drug Ultram. (SMF, ¶ 24; Document # 101, Exhibit 1 at pp. 1-2). Plaintiff had his first visit with Defendant Longstreet on August 29, 2007,[2] at which time it was noted that Plaintiff had a history of "multiple IV" drug use and was "+ viral,"

---

2

In his brief in support of his motion for summary judgment, Plaintiff claims that the first time he saw Defendant Longstreet was in November 2007, and that Defendant Longstreet "back dated his notes in an attempt to cover up his deliberate indifference to treating my serious medical needs." (Document # 110 at p. 5). However, such a bald assertion fails to create a material issue of fact, considering the August 29, 2007 visit is supported by the relevant progress note, which appears to be authentic and contemporaneous, and is verified under oath by Defendant Longstreet in his Affidavit. (See Document # 101, Exhibit 1 at p. 15; Longstreet Affidavit attached as Exhibit 5 to Document # 101, at ¶ 6).

3

indicating his positive Hepatitis C condition. (SMF, ¶ 25; Document # 101, Exhibit 1 at p. 15). Plaintiff was assessed with generalized anxiety disorder and severe personality disorder, and his prescription of Klonopin was continued at the same dosage, although Defendant Longstreet "discussed [his] grave concerns about the high dose of Klonopin [Plaintiff] had been taking, particularly in the context of his liver disease." (SMF, ¶ 25; Longstreet Affidavit at ¶ 19).[3]

On November 9, 2007, Defendant Longstreet informed Plaintiff that, based upon Plaintiff's abnormal liver function tests, he planned to gradually reduce the dosage of Klonopin from 5 mg to 3 mg per day, because the medication was "hard on the liver" and could exacerbate Plaintiff's Hepatitis C condition to the point of liver failure and death. (SMF, ¶ 35; Longstreet Affidavit at ¶ 20; Document # 101, Exhibit 1 at p. 16). Defendant Longstreet noted that Plaintiff was anxious about having his medication lowered and felt that he would decompensate. Nonetheless, Defendant Longstreet's plan was to taper Plaintiff's dosage to 1 mg, three times a day, by reducing the dosage by .25 mg every 7 days. (SMF, ¶¶ 36-37; Longstreet Affidavit at ¶ 20; Document # 101, Exhibit 1 at p. 18 and Exhibit 2 at p. 49).

Plaintiff followed up with Defendant Longstreet on February 1, 2008, at which time Plaintiff appeared "well and relaxed" and had not suffered any adverse side effects or psychiatric decompensation. (SMF, ¶ 40; Longstreet Affidavit at ¶ 22; Document # 101, Exhibit 1 at pp. 17-18). Defendant Longstreet then informed Plaintiff that he wanted to continue tapering the dosage of Klonopin down to 1.5 mg a day, at which point Plaintiff became "extremely irritable," began using profanity, and claimed that Defendant Longstreet was "trying to kill [him]." (SMF, ¶ 41; Longstreet Affidavit at ¶ 23; Document # 101, Exhibit 1 at p. 17). Nonetheless, Defendant Longstreet persisted, explaining to Plaintiff that "serious liver damage will occur" with continued use of Klonopin, especially when taken in combination with Ultram. (Id.).

---

[3] According to Defendant Longstreet, "Klonopin is a Benzodiazepine medication used primarily as an anti-anxiety medication. Long-term use of Klonopin causes medication-dependence, liver damage and can exacerbate the course of Hepatitis C and consequent liver damage." (Longstreet Affidavit attached as Exhibit 5 to Document # 101, at ¶ 7).

4

On February 19, 2008, Defendant Longstreet received a call from Mary Beth Anderson ("Anderson"), a psychologist at SCI-Albion, who informed him that Plaintiff was "out of control" because his Klonopin dosage had been reduced to 2.75 mg a day. (SMF, ¶ 44; Longstreet Affidavit at ¶ 24).  Anderson also warned Defendant Longstreet to be careful because Plaintiff "had it out" for him and was believed to be carrying "some weapon like a razor or a shank." (Id.).[4]  In his progress notes that day, Defendant Longstreet noted that he had also received "multiple calls from staff on [Plaintiff's] block" informing him that Plaintiff was handling the dosage reduction poorly and was extremely irritable and anxious. (Document # 101, Exhibit 1 at p. 19).  As a result, Defendant Longstreet canceled his order to continue tapering the Klonopin medication and put Plaintiff back on a dosage of 3 mg a day. (SMF, ¶ 46; Longstreet Affidavit at ¶ 25; Document # 101, Exhibit 1 at p. 19).  Nonetheless, Plaintiff refused to be seen again by Defendant Longstreet and his treatment was taken over by another psychiatrist, Dr. Sean Su. (SMF, ¶ 48; Longstreet Affidavit at ¶ 27).

### C.  Standard of Review
#### 1.  Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if

---

[4] During his deposition, Plaintiff admitted that he "had a meltdown" on February 19, 2008, as a result of the decrease in his Klonopin dosage. (See transcript of Plaintiff's deposition attached as Exhibit 8 to Document # 101, at internal p. 57).

appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Company, 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Company v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Company of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520-521(1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### D. Discussion

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need[5] involves the "unnecessary and wanton

---

[5] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

7

infliction of pain." Estelle, 429 U.S at 104.  Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury,  Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury"  White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation.  Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners."  Durmer, 991 F.2d at 67 (citations omitted).  Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment.  Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979), quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir. 1977).  Furthermore, deliberate indifference is generally not found when some level of medical care has been offered to the inmate.  Clark v. Doe, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").

Here, Plaintiff avers that Defendant Longstreet's "decision to stop the 'Klonopin' constitutes the unnecessary and wanton infliction of pain meeting the standard for deliberate indifference...." (Complaint at p. 7).  The Court disagrees.

It is well documented in the record that Defendant Longstreet's decision to taper the dosage of Plaintiff's Klonopin medication was based upon his reasonable medical concern that Plaintiff's liver may be further damaged by continued use of Klonopin, in light of Plaintiff's past history of multiple IV drug use, Hepatitis C condition, and concurrent use of the pain medication Ultram.  In addition, Defendant Longstreet notes that, since March 2003,  Plaintiff continually refused treatment for his Hepatitis C condition, despite his physician's warning that "his liver disease was serious and potentially fatal if left untreated." (Longstreet Affidavit at ¶ 10).  All of these factors were considered by Defendant Longstreet in making the

8

determination to reduce Plaintiff's Klonopin dosage, as evidenced by the following declarations set forth in Defendant Longstreet's Affidavit:

> 11. Because Mr. Fedimore has refused treatment for his Hepatitis C and because there is evidence of liver damage through his blood work and viral load, any clinician treating him must be aware of <u>all</u> medication classes which are not only metabolized by the liver but also to the extent to which they are metabolized. That is, certain medication classes such as Benzodiazepines (such as Klonopin), and Opioids (like Ultram), cause a greater strain on the liver because of the metabolic extent they demand for proper processing and eventual excretion. In this sense, these classes of medications (as well as many others) are considered toxic agents for patients with HCV. This is the primary reason that physicians scrupulously avoid the use of these classes of medications in any patient with HCV.
>
> 12. Invariably, the use of either Benzodiazepines or Opioids will result in an elevation of the patient's liver function enzymes, which indicates that the liver is being further compromised.
>
> 13. Furthermore, the use of both classes simultaneously, as in Mr. Fedimore's case, will cause higher elevations of liver function enzymes suggestive of even greater hepatic damage, seriously jeopardizing the function of the liver.
>
> 14. For a patient with chronic and persistent Hepatitis C like Mr. Fedimore, the chronic use of Benzodiazepines and/or Opioid medications can cause acute hepatic failure and death. There is also enhanced risk of hepatic carcinoma with consequent liver failure and death.
>
> 15. The fact that Mr. Fedimore has been taking Klonopin and Opioid analgesics for years does not mean his liver will tolerate their combined toxicity forever. Often, such patients will experience an acute hepatic failure which can lead to death.
>
> 16. Mr. Fedimore's laboratory studies, particularly his liver function tests, were abnormal, suggesting his liver was already damaged and that the medications he was taking were causing further liver damage.
>
> 17. I believed that it was imperative, and in Mr. Fedimore's best medical interest, to try to wean him from this medication and find an alternative anti-anxiety medication that does not interact negatively with the liver.
>
> 18. It is and was my medical opinion that continued use of Klonopin at his then current levels posed an unreasonable risk of causing permanent liver damage to Mr. Fedimore. Mr. Fedimore already has permanent liver damage and it is imperative that further damage be avoided.

(Longstreet Affidavit at ¶¶ 11-18).

The foregoing is clear evidence that, rather than being deliberately indifferent to Plaintiff's serious medical needs, Defendant Longstreet was conscientiously attempting to prevent further deterioration of Plaintiff's overall medical condition by reducing the dosage of medication he considered to be "toxic" to Plaintiff's system. Moreover, the manner in which Defendant Longstreet deliberately tapered Plaintiff's Klonopin dosage, by only .25 mg every seven days, demonstrated concern and consideration for Plaintiff's mental and physical state throughout the "weaning" process. In fact, when Defendant Longstreet saw Plaintiff on February 1, 2008, after the Klonopin dosage had been reduced from 5 mg to 3 mg, "[t]here was no evidence that [Plaintiff] had suffered any side effects of the reduction or any psychiatric decompensation." (Longstreet Affidavit at ¶ 22). It was only after the dosage was decreased further that Plaintiff began exhibiting extreme irritation and hostility toward staff members, at which time Defendant Longstreet canceled the Klonopin taper order and restored the dosage back to the manageable level of 3 mg.[6]

In short, there is nothing in the record that would support a finding of deliberate indifference on the part of Defendant Longstreet. Instead, the crux of Plaintiff's claim is that Defendant Longstreet's "reasons for wanting to stop the 'Klonopin' [were] not sound nor [were] they based on a legitimate medical principle." (Complaint at p. 6). However, "mere disagreements over medical judgment" do not rise to the level of an Eighth Amendment violation. White, 897 F.2d at 110. Accordingly, summary judgment should be entered in favor of Defendant Longstreet and this case should be dismissed.

### III   CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's motion for summary judgment [Document # 100] be granted, and that Plaintiff's motion for summary judgment [Document # 109] be denied.

---

[6] During his psychological consultation with Anderson on December 10, 2007, Plaintiff acknowledged that "3 mg is manageable." (Document # 101, Exhibit 1 at p. 33).

10

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation.  Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto.  Failure to timely file objections may constitute a waiver of some appellate rights.  See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: April 21, 2010

cc: The Honorable Maurice B. Cohill
United States District Judge